UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ELKO BROADBAND LTD., | Case No. 3:19-cv-00610-LRH-WGC |
| Plaintiff, | ORDER |
| v. | |
| DHABI HOLDINGS PJSC, WARID TELECOM INTERNATIONAL LLC, DOMINIQUE RUSSO, WATEEN TELECOM LIMITED, | |
| Defendants. | |

Plaintiff Elko Broadband LTD. ("Elko") has filed two motions for clerk's entry of default (ECF Nos. 21, 22) against Defendants. Defendant Warid Telecom International LLC ("WTI") has addressed both motions and responded with a motion to strike or stay (ECF No. 23) and a motion to compel arbitration (ECF No. 24). Elko has responded to the motion to compel arbitration (ECF No. 26), and WTI filed a reply (ECF No. 31). Additionally, Elko has filed a motion for reconsideration (ECF No. 32) of this Court's order denying Elko's motion to remand (ECF No. 29). WTI has responded to the motion for reconsideration (ECF No. 33), and Elko filed a reply (ECF No. 34). For the reasons stated below, the Court denies the motion for reconsideration, grants the motion to compel arbitration, and will stay the motion for clerk's entry of default judgment.

///

///

///

## I. Factual Background and Procedural History

This case concerns an international business transaction between Elko, WTI, and defendant Wateen Telecom Limited ("Wateen"). Elko alleges it began negotiations with WTI for the purchase of Wateen in January 2017. (ECF No. 1-1 at 4). After more than a year of negotiations, Elko and WTI entered into a binding agreement ("the "Term Sheet") for the sale of Wateen. (ECF No. 9-1). The Term Sheet sets out "the preliminary understanding regarding certain principal terms and conditions which [WTI and Elko] intend to include in the transaction documents." *Id.* at 3. Important to this order, the Term Sheet contains a mandatory arbitration provision to resolve any disputes that arise out of the Term Sheet. *Id.* at 4. Specifically, the arbitration clause requires for English law to be applied, and for any potential disputes to be resolved at the London Court of International Arbitration. *Id.* at 4.

In March 2019, defendant Dhabi Holdings PJSC ("Dhabi") sold WTI during the fourth quarter of 2018. ECF No. 1-1 at 6. Dhabi was WTI's previous owner. *Id.* Elko alleges that any transfer of WTI's ownership had to be approved by the Pakistani government. *Id.* at 5. Elko alleges that the transfer of WTI from Dhabi did not have the approval of the Pakistani government. *Id.* at 6. Elko filed its complaint in Nevada state court on September 12, 2019, alleging several causes of action related to the failed purchase of Wateen and defamatory statements allegedly made by defendants concerning Elko. ECF No. 1-1. WTI removed Elko's action to this Court on October 4, 2019, with Elko filing its motion to remand on November 12. ECF Nos. 1, 8. In March 2020, this Court denied Elko's motion to remand. ECF No. 29.

Following the motion to remand, and before this Court's order on that matter, Elko filed two motions for entry of clerk's default. ECF Nos. 21, 22. Both motions allege that Elko properly served the international defendants, and they each have failed to return a pleading. *Id.* In response, WTI filed a motion to strike or stay Elko's motions for entry of clerk's default and filed a motion to compel arbitration under the Term Sheet. ECF Nos. 23, 24. Eventually, Elko filed a motion for reconsideration of this Court's order on remand. ECF No. 32.

The motion for reconsideration, the motion to compel arbitration, as well as the motions for entry of clerk's default and motion to strike or stay are now pending before the Court.

## II. Legal Standard

### A. Motion for Reconsideration

Although the Federal Rules of Civil Procedure do not explicitly allow for an aggrieved party to seek reconsideration of a court's judgment, federal courts have typically construed such requests as falling under Rule 59(e) or 60(b). A district court may reconsider a prior order only where the court is presented with newly discovered evidence, an intervening change of controlling law, the original decision was manifestly unjust, or where the prior order was clearly erroneous. *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Motions for reconsideration are "extraordinary remed[ies]," and they should only be used "sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). Whether or not to grant reconsideration is within the sound discretion of the district court. *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

### B. Motion to Compel Arbitration

The Ninth Circuit has determined that "the federal law of arbitrability under the Federal Arbitration Act ('FFA') governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Because the FAA mandates that "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]" a court's involvement is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal quotation marks omitted) (emphasis in original). "Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate." *Cox*, 533 F.3d at 1119. The FAA states that written agreements to arbitrate arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court is satisfied that the making of the arbitration agreement is not at issue, then the court must order arbitration. *Howard Elec. & Mech. Co. v. Frank Briscoe*

3

*Co.*, 754 F.2d 847, 849 (9th Cir. 1985) (courts "can only determine whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms." (internal quotation marks and citation omitted)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000).

### C. Motion for Entry of Clerk's Default

Obtaining a default judgment is a two-step process governed by Federal Rule of Civil Procedure 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, Rule 55(a) provides, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b). FED. R. CIV. P. 55(b).

Upon entry of a clerk's default, the court takes the factual allegations in the non-defaulting party's complaint as true. Nonetheless, while entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F.Supp.2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion, *id.* (citations omitted), which may include requiring the moving party to "establish the truth of any allegation by evidence," FED. R. CIV. P. 55(b)(2)(C).

### III. Discussion

Each of the motions—for reconsideration, to compel arbitration, and for entry of clerk's default (and therefore the motion to strike or stay)—are addressed in turn.

### A. Motion for Reconsideration

Elko alleges that "newly discovered" evidence requires relief from this Court's order denying a motion for remand to state court. ECF No. 32. Specifically, Elko argues, and provides a supporting affidavit, that Adeel Bajwa ("Bajwa") did not have the authority to bind WTI to the Term Sheet containing the arbitration clause. *Id.* at 3. In other words, according to Elko, the arbitration clause—which provided this Court jurisdiction—cannot be enforced by a non-

4

signatory. *Id.*; *see Outokumpu Stainless U.S., LLC v. Converteam SAS*, 902 F.3d 1316 (11th Cir. 2018) (finding "agreement in writing" requirement not satisfied to compel arbitration between a non-signatory and signatory party).

However, the Court need not address the factual substance of Elko's argument because it fails as a matter of law. The United States Supreme Court recently overturned the 11th Circuit precedent relied on by Elko in *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020). There, the Court directly contradicts Elko by holding that the New York Convention does not categorically prohibit non-signatories from enforcing arbitration agreements under domestic doctrines including equitable estoppel. *Id.* at 1645. Additionally, as this Court noted in its prior order on this matter, the issue of whether the Term Sheet was executed by an officer of WTI is better suited for the enforceability stage of this case—not removability. ECF No. 29 at 4 (citing *Davis v. Cascade Tanks, LLC*, No. 3:13-CV-02119-MO, 2014 WL 3695493, at *7, n.9 (D. Or. July 24, 2014)). Accordingly, the Court finds that the motion for reconsideration should be denied.

### B. Motion to Compel Arbitration

This Court has previously found that "the arbitration provision within the Term Sheet 'falls under' the scope of the New York Convention and that it 'relates to' Elko's dispute with WTI and the other defendants. ECF No. 29 at 5; *see Chiron Corp*, F.3d at 1130 (finding that a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.") Based on this finding, WTI and defendants now seek to compel arbitration as stipulated in the Term Sheet. ECF No. 24.

The Court finds that arbitration is appropriate for all claims and defendants. Arbitration, especially in the field of international commerce, is favored under U.S. law. *See Polimaster Ltd. V. RAE Sys.*, 623 F.3d 832, 841 (9th Cir. 2010). Moreover, the entire case, and not individual claims, go to arbitration if they are connected to the contractual agreement. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly.")

///

Here, the Term Sheet provides that arbitration is required for any dispute "under or in connection with it." ECF No. 9-1 at 4. Viewed broadly, that phrase encompasses all claims in Elko's complaint. The first three claims directly relate to the contract as they concern alleged fraud in connection with the sale of WTI. ECF No. 1-1 at 9–13. Moreover, while Elko argues that the arbitration clause does not apply to the fourth and fifth state law claims of libel and defamation arising out of the failed sale, this Court has already pointed out that "it is unclear how purely state law claims are exempt from arbitration agreements, and Elko cites to no authority for its argument." ECF No. 29 at 5. In addition, all defendants can properly arbitrate the claims. First, both defendants WTI and Wateen are signatories to the Term Sheet, and therefore arbitration directly applies to Elko's claims brought against them. Second, principles of equitable estoppel raised by WTI compel arbitration against non-signatory defendants Dhabi and Dominique Russo ("Russo").

When enforcing an arbitration agreement, general principles of contract and agency apply. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Among those principles, is equitable estoppel. *Id.* Broadly speaking, "equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Id.* (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). In arbitration agreements, a signatory may be forced to arbitrate claims they have brought, "especially where it sues a parent instead of a subsidiary in a transparent attempt to avoid arbitration." *Enters. Int'l, Inc. v. Pasaban, S.A.*, 2013 WL 526163, *4 (W.D. Wash. Feb. 11, 2013); *see also Sokol Holdings, Inc. v. MBM Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008). So here, where defendant Dhabi is a shareholder of WTI, and Russo was an executive of Dhabi and the alleged CEO of WTI, arbitration is appropriate since the claims intertwine, overlap, and all relate to the original contractual agreement with WTI.

Elko raises several arguments—some already addressed by this Court—as to why arbitration is inappropriate. Specifically, Elko argues the that: (1) the Term Sheet is unenforceable; (2) the Term Sheet was not executed by an officer of WTI; and (3) this Court lacks subject matter jurisdiction. *See* ECF No. 26.

First, regarding the enforceability of the Term Sheet, Elko argues that the Term Sheet has expired because the exclusivity period was limited to three months following the execution of the Term Sheet. *Id.* at 3. In other words, according to Elko, the Term Sheet was unenforceable after October 18, 2018. *Id.* However, despite Elko's assertion, the exclusivity period does not control the enforceability of the arbitration clause. The exclusivity period was an agreement between the parties to exclusively deal with each other during the three-month period. ECF No. 8-1, at 2–3. On the other hand, the arbitration clause, entitled "Governing Law and Jurisdiction," was a binding agreement between the parties that survived the exclusivity period. *Id.* at 2. In addition, even assuming the arbitration clause expired after three months, it is largely undisputed that some arbitration clauses survive the termination of contracts. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991) ("We presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement."); *see also Huffman v. Hilltop Companies, LLC*, 747 F.3d 391 (6th Cir. 2014) (strong presumption that arbitration clause survives when the question is ambiguous); *OwnZones Media Network, Inc. v. Sys. In Motion, LLC*, 2014 WL 4626302, at *7 (W.D. Wash. Sept. 15, 2014).

Second, Elko raises the same argument addressed by the motion for reconsideration, arguing that Bajwa could not bind WTI to the Term Sheet. ECF No. 26 at 4. However, aside from this Court's prior discussion on the matter above, threshold issues of arbitrability—including whether Bajwa could bind WTI to the arbitration agreement—are better left to an arbitrator. *See Henry Schein, Inc. v. Archer & Sales, Inc.*, 139 S. Ct. 524 (2019). In *Schein*, the United States Supreme Court determined that "when the parties' contract delegates the question of the arbitrability of a particular dispute to an arbitrator, a court may not override the contract." *Id.* at 529. Here, the parties' agreed to arbitrate under the rules of the London Court of International Arbitration ("LCIA"). ECF No. 8-1, at 4 ("…it will be referred for resolution by arbitration under the rules of the [LCIA] by a sole arbitrator.") Notably, the LCIA rules provide that, "[t]he Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration

Agreement." RULES OF THE LONDON COURT OF INT'L ARBITRATION art. 23.1 (2020). Therefore, because the LCIA rules delegate the issue of arbitrability to the arbitrator, considerations like Bajwa's signature and the ultimate scope of arbitrable issues are best left to arbitrators. *See ROI Properties Incorporated v. Burford Capital Limited*, 2019 WL 1359254, *4 (D. Ariz. Jan. 14, 2019) ("…the incorporation of LCIA rules in the [agreement's] arbitration provision is a clear and unmistakable agreement to delegate the adjudication of the gate way issue of arbitrability to the arbitrator.") (citation omitted).

Lastly, turning to the alleged jurisdiction defects, Elko appears to argue this Court lacks subject matter jurisdiction. ECF No. 26. Notably, this Court has already addressed these arguments in its order on the motion to remand. ECF No. 29. Specifically, the order held that Elko mostly waived its procedural challenges to jurisdiction, and this Court had "federal question jurisdiction over Elko's complaint pursuant to 9 U.S.C. §§203 and 205." *Id.* at 3, 5.

For the reasons stated above, the Court finds that arbitration is appropriate. All claims and defendants in Elko's dispute with WTI arise out of the contractual agreement between the parties. Accordingly, this Court grants WTI's motion to compel arbitration.

### C. Motion for Entry of Clerk's Default

Elko seeks an entry for default judgment because allegedly all parties were properly served and failed to return a pleading. ECF Nos. 21, 22. WTI seeks to strike, deny, or stay these motions because 1) opposing counsel allegedly was not consulted about the motion; 2) service was improper for the international defendants; and 3) the Court should send the case to arbitration. ECF No. 23, at 2–3.

Without addressing the alleged deficiencies of Elko's service, the Court finds that the motion for default should be stayed for arbitration. Addressing any service issues before arbitration would be premature and not in the interest of judicial economy. Accordingly, the Court will stay Elko's motion for default judgment pending arbitration.

///

///

///

## IV. Conclusion

IT IS THEREFORE ORDERED that Elko's motion for reconsideration (ECF No. 32) is **DENIED.**

IT IS FURTHER ORDERED that WTI's motion to compel arbitration (ECF No. 24) is **GRANTED**.

IT IS FURTHER ORDERED that WTI's motion to stay entry of default by clerk (ECF No. 23) is **GRANTED** and Elko's motions for clerk's entry of default are **STAYED** (ECF Nos. 21, 22).

IT IS SO ORDERED.

DATED this 2nd day of November, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE